UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------
                                          )
In re:                                    )          Chapter    7
                                          )
CHARLES ATWOOD FLANAGAN,                  )          Case No.    99-30565 (ASD
                                          )
        Debtor.                           )          Re: Doc. I.D. No. 858
                                          )
------------------------------------------------------------------

## MEMORANDUM AND ORDER ON APPLICATION FOR ALLOWANCE
## AND PAYMENT OF ATTORNEY'S FEES AND EXPENSES

### I. INTRODUCTION

Before the Court is an application seeking approval of fees of $66,746.27 and expenses of $71.02 related to legal activity undertaken by an attorney employed by the Chapter 7 trustee, with the Court's approval, pursuant to Bankruptcy Code Section 327(a). For the reasons discussed hereafter, the Court will approve a limited award of compensation in the amount of $5,000.00 for fees, plus an expense reimbursement $71.02.

### II. PROCEDURAL AND FACTUAL BACKGROUND

On February 17, 1999 (hereafter, the "Petition Date"), Charles Atwood Flanagan (hereafter, the "Debtor") commenced the underlying bankruptcy case through the filing of a voluntary petition under Chapter 11. On January 16, 2003, the Chapter 11 case was converted to a case under Chapter 7. Upon the conversion, Bonnie C. Mangan, Esq. (hereafter, the "Trustee") was appointed Chapter 7 trustee of the bankruptcy estate. On April 1, 2003, the Court, on the Trustee's Petition for Authority to Employ and Appoint an Attorney (hereafter, the "Petition to Employ"), Doc. I.D. No. 580, entered an Order

Authorizing Appointment of Attorney (hereafter, the "Order"),[1] Doc. I.D. No. 595,

authorizing the Trustee to employ Attorney Michael S. Schenker, Esq., of the Law Firm of

Francis, O'Neil & Delpiano, LLC, (hereafter, the "Applicant"), as legal counsel for the

Trustee, for the following purposes:

> [t]he review of evidence, recovery, and defense and initiation of litigation with
> regard to the determination of ownership of property and the recovery of
> property for the estate and the recovery of improper post-petition transfers.

and ordering, *inter alia*,

> that legal fees shall be on a contingent fee basis of one-third (1/3) *of all
> amounts recovered,* and upon any appeal a contingent fee of 40% *of any
> amount recovered.*

(emphasis added).

On August 17, 2007, the Applicant filed an Interim Application for the Allowance and

Payment of Attorney's Fees to Francis, O'Neil & Delpiano, LLC (hereafter, the

"Application"),[2] Doc. I.D. No. 858, seeking  approval of legal fees of $66,746.27 and

expenses in the amount of $71.02.  The Application met with the approval of the Trustee

and the Office of the United States Trustee, but drew opposition from The Cadle Company

and D.A.N. Joint Venture, A Limited Partnership (hereafter, "Cadle"), see Objection of The

Cadle Company . . .   (hereafter, the "Cadle Objection"), Doc. I.D. No. 868, and John C.

Flanagan (hereafter, "Flanagan"),[3] see Objection of John C. Flanagan . . . . (hereafter, the

---

[1] The Petition to Employ was accompanied by a proposed order which was entered without material alteration.

[2] Attached to the Application as Exhibit C were "Detailed Time Records" (hereafter, the "Time Records").

[3] John C. Flanagan is the Debtor's father.

"Flanagan Objection"), Doc. I.D. No. 869 (hereafter, collectively, the "Objections").  The

Application and Objections were considered at a hearing held October 17, 2007 (hereafter,

the "Hearing"), at which, conditioned upon and subject to certain record representations,

Flanagan, through counsel, withdrew  the Flanagan Objection.  However, Cadle, through

its counsel, maintained and argued the Cadle Objection.

### III. DISCUSSION

The Applicant maintains that, as a result of his employment, the monetary sum of

$290,000.00 was "recovered" for the bankruptcy estate, entitling him to $96,666.66 in fees

($290,000.00 X 1/3 = $96,666.00) in accordance with a calculus employing the contingency

fee structure of the Order.  Nevertheless, following conversations with the Office of the

United States Trustee, he has applied for approval of fees on the basis of 177 hours

expended at his hourly rate of $250.00 times 150%, <u>see</u> Time Records,[4]  in the amount of

$66,375.00.

Technically, the  Application's request for a fee award on an hourly rate basis finds

no support in the Order, which provides *only* for a contingency fee. However, under the

circumstances, the Court will deem the Application to seek approval of a contingency fee

as authorized by the Order, but prosecuted with a voluntary reduction of $29,919.75.

Cadle acknowledges that the Application and supporting documentation "describes

in appropriate detail all of the work [the Applicant] provided for the benefit of the [the

Trustee] and the estate", but maintains, *inter alia*,  that the Application does not "describe

---

[4] The Application also sought fees totaling $371.25 for services performed by a
Legal Assistant (3.3 hours at $75.00/hr. X 150% = $371.25).

or otherwise reveal any property . . . *recovered* for the estate. Cadle Objection, at 1. The Court now turns to that critical question – whether, and to what extent, the bankruptcy estate's liquidation of $290,000.00 in assets represents a "recovery" within the meaning of the Order.

Under the Bankruptcy Code, forms of the word "recover" or "recovery" are terms of art. Section 541(a), describing the elements of a bankruptcy estate, draws a clear distinction between property interests of the debtor "as of the commencement of the case", see Section 541(a)(1), and property interests which the trustee "recovers" after the commencement of the case, see Section 541(a)(3). Generally speaking then, property "recovered" under the Bankruptcy Code necessarily excludes property which the debtor plainly owned when he commenced his case. This distinction is also consistent with general English usage of forms of the word "recover" – which connotes a *re*-claiming or *re*-capturing of something previously *lost*.

Applying this principle to the present contested matter requires consideration of two separate events – the Trustee's sale of the Debtor's interest in Thompson & Peck, Inc. and Flanagan/Prymus Insurance Group, Inc., (hereafter, collectively, "Thompson & Peck"), and the Trustee's sale of the estate's interest in M.J.C.C. Realty L.P. (hereafter, "MJCC").

**A. The Trustee's Sale of the Estates Interest in Thompson & Peck.**

Among the assets owned by the Debtor on the Petition Date was a 50% equity interest in Thompson & Peck.[5] This equity interest, which the Trustee inherited by the

---

[5] For additional background, *see*, *e.g.*, *Modified Memorandum of Decision on Complaint for Avoidance of Preferential Transfer*, Doc. I.D. No. 50, *aff'd., The Cadle Company v. Mangan, Trustee*, 3:03cv1358 (9/30/2004 Arterton, J.), *aff'd.*, *Cadle Co.,*

authority of Code Section 541(a)(1), was marketed and ultimately sold by the Trustee.

As a basis for the requested compensation, the Application and supporting Time

Records assert, *inter alia*, that the Applicant engaged in:

> (i) "[a]nalysis" and "[r]esearch" regarding Thomson & Peck, its Directors, stock and activities, Application at 2, ¶¶ b and d,

> (ii) related appearances before this Court, id., ¶ f,

> (iii) "extensive conferences and negotiations . . . [with various attorneys] and [the Trustee] regarding *sale* of estate's interest in Thompson & Peck stock", id., ¶ g, and

> (iv) "[e]xtensive negotiations [with various attorneys] as to price, documentation and procedures *to sell* Thompson & Peck stock" id., ¶ l.

(emphasis added within quotations).

No doubt the Applicant's legal work facilitated the Trustee's *sale* of the bankruptcy

estate's interest (the Debtor's 50% stock interest) in Thompson & Peck for $275,000.00,

thereby liquidating that stock interest into a cash asset of the estate.   Under no

circumstances or definition, however, can this $275,000.00 bankruptcy estate liquidation

of estate property that had never *left* the estate, be viewed as a "recovery" – it was a sale

of estate property pure and simple.  Accordingly, there was no "recovery"; and under the

clear language of the Order the Applicant is not entitled to any legal fee attributable to the

Thompson & Peck sale.[6]

---

*D.A.N. Joint Venture, L.P. v. Mangan, Trustee, et al., (In re Flanagan)*, --- F.3d --- (2d Cir. 2007) (decided October 9, 2007).

[6] The terms of Code Section 328(a) – permitting a court to "allow compensation different from the compensation provided [in the Order] after the conclusion of such employment, *if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions*) (emphasis added) – were not argued or offered as a basis for approval

**B. The Trustee's Sale of the Estate's Interest in MJCC.**

Prior to the Petition Date the Debtor created and funded MJCC, which purchased and/or held legal title to at least two parcels of Connecticut real property in which the Debtor arguably held equitable interests, namely 230 Millbrook Road in the Town of North Haven, and 25 Queach Road in the Town of  Branford (hereafter, collectively,  the "Properties").

Neither the entity MJCC nor any of the Properties were legally the Debtor's property on the Petition Date and thus, were not then, or thereafter, property of this bankruptcy estate. Almost immediately upon her appointment, the Trustee became aware of the Debtor's putative interest in MJCC and the Properties.  However, the Trustee declined to initiate an adversary proceeding in pursuit of MJCC or the Properties for the benefit of the bankruptcy estate.  Instead, on August 4, 2004, she sold "any and all interest . . . which [she] . . . may have [had] . . . in and to MJCC . . . together with any and all interest which . . . [she] may have [had] . . . in [the Properties]" to Titan Real Estate Ventures, LLC (hereafter, the "Titan") for the sum of $15,000.00.[7]  In effect, the Trustee sold to Titan a potential "*right to recover*" the Properties.  The Court views this sale as tantamount to a "recovery" that benefitted the bankruptcy estate in the amount of $15,000.00.  Accordingly,

by the Applicant, Trustee, or United States Trustee, perhaps because the record does not permit Section 328(a)'s requisite findings with regard to the Thompson & Peck sale (representing approximately 95% of the monetary value of the claimed "recoveries").

[7] The Trustee also "received"  2.5% of any net recovery Titan were to receive as a direct result of its purchase of the subject rights and interests. As assignee of the Trustee's supposed rights, Titan subsequently sought to "recover" the Properties, or their value, for its own benefit. For additional background, *see Findings of Fact and Conclusions of Law on Motion for Summary Judgment*, Doc. I.D. No. 210, in *Titan Real Estate Ventures, LLC, v. M.J.C.C Realty L.P. et al.*, Adversary Proceeding No. 04-3146.

pursuant to the terms of the Order,  the Applicant is entitled to a fee award related to this

recovery on a contingent fee basis of one-third (1/3), that is, $5,000.00.

## ORDER AWARDING ATTORNEYS FEES AND EXPENSES

The Court, for the reasons stated herein, and having reviewed the Application, related Time Records, and the Objections in their entirety, and having considered the arguments presented at the Hearing, and other relevant files and records of this bankruptcy case, in accordance with which:

**IT IS HEREBY ORDERED** that the Application is **APPROVED in part** – the Applicant is allowed and awarded compensation in the amount of **$5,000.00** for attorneys fees plus an expense reimbursement **$71.02** [8] pursuant to Bankruptcy Code Section 330; and

**IT IS FURTHER ORDERED** that in all other respects the Application is **DENIED.**

Dated: October 22, 2007                                    BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge

---

[8] As to expenses, the record of this proceeding is particularized, *see* Time Records (also listing certain expenses) at pp. 22, 24 & 25, and is undisputed as to the monetary amount incurred as "actual and necessary", *see* Section 330(a)(1)(B), but does not permit a definitive determination that the *entire* expense reimbursement request of $71.02 arises from the "recovery" of $15,000 in connection with the Trustee's sale to Titan of the right, if any, to "recover" certain properties, or is otherwise allowable. Indeed, it appears that at least $28.12 is attributable to the Thompson & Peck stock sale. Nevertheless, the clear language of the Order limits its "recovery-based" allowance prerequisite to "legal fees". Accordingly, an expense reimbursement in the full amount requested is awarded herein.